IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT DARREL HOGUES | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-07-CV-0759-R |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Scott Darrel Hogues, a Texas prisoner, has filed an application for writ of habeas

corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of aggravated assault of a public servant and evading arrest.

Punishment, enhanced by a prior felony conviction, was assessed at 70 years confinement on the

aggravated assault charge and 10 years confinement on the evading arrest charge. Both convictions

were affirmed on direct appeal. *Hogues v. State*, Nos. 05-03-01567-CR & 05-03-01568-CR, 2005

WL 435106 (Tex. App.--Dallas, Feb. 25, 2005, pet. ref'd). Petitioner also challenged his convictions

on state collateral review. The Texas Court of Criminal Appeals denied relief without written orders.

*Ex parte Hogues*, WR-64,789-01, WR-64,789-02 & WR-64,789-03 (Tex. Crim. App. Jan. 17, 2007).

Petitioner then filed this action in federal district court.

## II.

In two grounds for relief, petitioner contends that: (1) the prosecutor exercised his peremptory challenges in a discriminatory manner to exclude five of six eligible African-Americans from jury service; and (2) he received ineffective assistance of counsel.

## A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). Federal habeas courts review questions of law and mixed questions of law and fact under section 2254(d)(1). Pure questions of fact are reviewed under section 2254(d)(2). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 122 S.Ct. 194 (2001).

A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1523. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *quoting Williams*, 120 S.Ct. at 1521-22 (O'Connor, J., concurring). Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B.

Petitioner first contends that the prosecutor used five of his 10 peremptory challenges to exclude all but one eligible African-American from jury service in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

## 1.

The Fourteenth Amendment guarantees every defendant in a criminal case equal protection under the law. *Hernandez v. Texas*, 347 U.S. 475, 477, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). This right extends to the jury selection process. *Swain v. Alabama*, 380 U.S. 202, 204, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965); *Strauder v. West Virginia*, 100 U.S. 303, 305-08, 10 Otto 303, 25 L.Ed. 664 (1879). Thus, a prosecutor may not use peremptory challenges to exclude potential jurors solely on the basis of their race. *Swain*, 85 S.Ct. at 837-38. Prior to 1986, the use of peremptory strikes against minority jurors was not unconstitutional absent proof of a historical pattern of racial bias. *Id.* at 837-38. The Fifth Circuit explained this burden as follows:

> In order to prevail [on a *Swain* claim], [petitioner] must prove that his prosecutor had a systematic and intentional practice of excluding blacks from traverse juries in criminal trials through the exercise of

> peremptory challenges, and that this practice continued unabated in petitioner's trial.

*Evans v. Cabana*, 821 F.2d 1065, 1068 (5th Cir.), *cert. denied*, 108 S.Ct. 5 (1987), *citing Willis v. Zant*, 720 F.2d 1212, 1220 (11th Cir. 1983), *cert. denied,* 104 S.Ct. 3548 (1984). Unless a defendant had evidence of purposeful and systematic discrimination, the prosecutor was entitled to a presumption that he used his peremptory strikes in a proper manner. *Swain*, 85 S.Ct. at 837.

The Supreme Court revisited *Swain* two decades later in *Batson*. Recognizing that it is often impossible for a defendant to prove the systematic exclusion of minorities from jury service over an extended period of time, the Court rejected this evidentiary formulation "as inconsistent with standards that have been developed since *Swain* for assessing a prima facie case under the Equal Protection Clause." *Batson*, 106 S.Ct. at 1721.[1] No longer were defendants required to establish a historical pattern of discrimination in the use of peremptory strikes. Under *Batson*, "a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*." *Id.* at 1722 (emphasis in original).

*Batson* articulates a three-part test for proving purposeful discrimination in the exercise of peremptory challenges. First, the defendant must raise an inference that the prosecutor excluded potential jurors on the basis of race. *Id.* at 1723; *United States v. Wallace*, 32 F.3d 921, 925 (5th Cir. 1994). A defendant may satisfy this burden in a variety of ways, such as by showing a pattern of strikes against minority jurors on the venire panel or by statements made by the prosecutor during the voir dire examination. *Batson*, 106 S.Ct. at 1723. Second, if the defendant makes a prima facie showing of the discriminatory use of peremptory challenges, the burden shifts to the prosecution to articulate a race-neutral explanation for each of the challenged strikes. *Id.* at 1723-24; *Wallace*, 32

---

[1] The Supreme Court observed that the "crippling burden" imposed by *Swain* rendered the prosecution's use of peremptory challenges "largely immune from constitutional scrutiny." *Batson*, 106 S.Ct. at 1721.

F.3d at 925. This inquiry focuses on the facial validity of the explanation given by the prosecutor for striking minority jurors. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (citations omitted); *see also United States v. Perkins*, 105 F.3d 976, 978 (5th Cir. 1997). Third, the court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson*, 106 S.Ct. at 1724; *Wallace*, 32 F.3d at 925. This final step of the *Batson* analysis involves evaluating "the persuasiveness of the justification" offered by the prosecutor. *See Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006), *quoting Elem*, 115 S.Ct. at 1771. However, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.*, 126 S.Ct. at 974.

A finding by the state court that the prosecutor exercised his peremptory challenges without any discriminatory intent is accorded great deference because it largely turns on an evaluation of the credibility or demeanor of the attorney who exercised the challenge. *See Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991); *United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993). Such a finding is a pure question of fact that will not be disturbed on federal habeas review unless it is "objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1028 (2006), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("*Miller-El I*"). *See also Collins*, 126 S.Ct. at 976 ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Petitioner, an African-American, was charged with aggravated assault of a public servant and evading arrest. Both cases were tried to the same jury in a consolidated proceeding. The original venire consisted of 65 prospective jurors. (SF-II at 42). Seventeen members of the panel were either struck for cause or excused by agreement of the parties. (*Id.* at 81). Another prospective juror was excused by the court. (*Id.* at 82). Of the remaining 47 jurors, six were African-American. After the lawyers submitted their strike lists, defense counsel objected that the prosecutor had used one-half of his allotted peremptory challenges against five of the six African-Americans on the jury panel. (*Id.* at 83).[2] In response, the prosecutor offered specific reasons for striking each African-American juror. With respect to Juror No. 11, Chatea Mills, the prosecutor explained:

> Ms. Mills responded to the question, as it relates to family members that have been arrested and charged. She's got a brother--actually, her husband not her brother. Her husband, Mr. Antrium Mills, who's on felony probation currently. She wrote here [on her jury questionnaire], for two and-a-half years. There is also a brother-in-law who's convicted of a felony, who's in the pen.

> In addition, all of the State's strikes--we view this as a punishment case. Anybody who put punishment as being their first choice--rehabilitation, I'm sorry. In this particular case, that was the reason why Ms. Mills was struck, Your Honor, was because of her questionnaire. That was it. It was the relationship of the people who were in the penitentiary. We feel this is a punishment case.

(*Id.* at 84-85). As grounds for striking Juror No. 15, Linda Harrison, the prosecutor stated:

> Ms. Harrison, along with having family members in the pen, put down punishment as being last, as her consideration. That was the reason why she was struck.

(*Id.* at 85).

---

[2] One African-American served on the jury. (SF-II at 84).

The prosecutor struck Juror No. 33, Marilyn Record, because:

> This venire person also had a family member, her husband, Alfred Record, on deferred adjudication for what she wrote down as stealing. In addition, her questionnaire--when asked: Do you believe police officers, more or less, she put she would "less likely believe police officers would tell the truth." She also put down, when asked if she had any health problems preventing giving full attention, she said, "Yes. IBS, acid reflux and go to the rest room at any given time." She clearly put here that she would less likely believe a police officer.

(*Id.*).

In support of his peremptory strike of Juror No. 40, Katherine Randle, the prosecutor offered:

> [She], as well, Judge, on her questionnaire, when asked: Do you believe police officers, more or less, to tell the truth than the average person, she wrote "less likely." Again, we believe this case hinges on--its an assault[ ] of a public servant. Police officers are main witnesses. We felt that this was adequate reason to strike. More than enough reason. She also put rehabilitation as her first consideration, as importance in the punishment phase of the trial. And we struck her for that reason. A combination.

(*Id.* at 85-86).

As for Juror No. 41, Sible Polk, the prosecutor told the court:

> Ms. Polk put as her first consideration for punishment--well, she ranked punishment of those convicted as being last: number three. And the State has, throughout all of the questionnaires and all the jurors that put punishment as being their least consideration, as it relates to rehabilitation and deterrence, we were striking those people, as well.

(*Id.* at 86).

The trial judge then called upon petitioner, through his attorney, to respond to each of the race-neutral explanations proffered by the prosecutor. Defense counsel attempted to cast doubt on the reasons given by the prosecutor for striking the African-American jurors by pointing out that two white members of the jury panel, Jeanine Byrd and Mary Tweed, also had relatives who had been

convicted of crimes and believed that police officers were just as likely as the average person to tell the truth. (*Id.* at 87). The prosecutor countered that unlike Byrd, whose grandson received probation in a drug case, and Tweed, whose nephew served six months in jail and was currently on probation for mail fraud, Mills and Harrison each had two close relatives who were either sentenced to prison or on felony probation. (*Compare id.*, St. Exhs. A & B *with id.*, Def. Exhs. A & B). Byrd and Tweed also ranked punishment as the most important objective in sentencing, (*see id.*, Def. Exhs. A & B), whereas Harrison, Randle, and Polk chose either rehabilitation or deterrence, (*see id.*, St. Exhs. B, D & E). Finally, unlike Randle and Record, who believed that police officers were "less likely" to tell the truth than the average person, (*see id.*, St. Exhs. C & D), Byrd believed that police officers were "more likely" to tell the truth and Tweed believed that there was "no difference," (*see id.*, Def. Exhs. A & B). After hearing the argument of counsel, the trial judge found that the prosecutor's strikes were not racially motivated and overruled petitioner's *Batson* objection. (*Id.* at 89).

On direct appeal, the state appeals court held that each of the explanations given by the prosecutor for striking the African-American jurors was race-neutral. *Hogues*, 2005 WL 435106 at *4, *citing Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) (fact that potential juror harbored "resentment towards the police" was race-neutral reason for exclusion); *Pondexter v. State*, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996) (juror's indication that her health problems could affect her service was race-neutral); *Emerson v. State*, 851 S.W.2d 269, 272 (Tex. Crim. App. 1993) (fact that prospective juror has friends or family in prison was race-neutral reason for exclusion); *Hatchett v. State*, 930 S.W.2d 844, 849 n.1. (Tex. App.--Houston [14th Dist.] 1996, pet. ref'd) (belief that rehabilitation is a primary goal of punishment is race-neutral reason for exercising peremptory strike). The court also found no evidence of pretext. While acknowledging that two white jurors

gave answers similar to some of those given by African-American jurors who were struck from the panel, the court went on to hold that "[w]e cannot automatically impute disparate treatment in every situation where one of the State's reasons for striking a venireperson could also apply to another venireperson whom the State found acceptable." *Id.* at *5. Petitioner now challenges that decision on federal habeas review.[3]

3.

Like most claims involving discriminatory jury selection practices, the critical issue in this case is whether the prosecutor's proffered race-neutral reasons for striking five of six eligible African-Americans from the jury can be believed. The ultimate conclusion of discriminatory intent is a question of fact. *See Ladd v. Cockrell*, 311 F.3d 349, 356 (5th Cir. 2002). As the Fifth Circuit explained:

> We would tend to reverse if the State's reasons were fantastic or inconsistent with its treatment of similar non-minority jurors. Where its reasons are believable, however, the inquiry is one of credibility. Obviously, this question of fact turns heavily on demeanor and other issues not discernible from a cold record, such that deference to the trial court is highly warranted[.]

*Id.* (internal quotations and citations omitted). None of the arguments made by petitioner in his federal writ, all of which were considered and rejected on direct appeal, convince this court that the state court finding on the ultimate issue of discriminatory intent is "objectively unreasonable." A side-by-side comparison of prospective jurors shows that none of the African-Americans struck by the prosecution were similarly situated to white jurors who shared some, but not all, of the same characteristics. *See Moore v. Keller Industries, Inc.*, 948 F.2d 199, 202 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 1945 (1992) (where an attorney has multiple reasons for striking a minority juror, "the

---

[3] Petitioner also raised a *Batson* claim on state collateral review. *See Ex parte Hogues*, WR-64,789-01 & WR-64,789-02.

existence of other jurors with some of their individual characteristics does not demonstrate that the reasons assigned were pretextual"). For example, three of the five African-Americans struck by the prosecutor--Linda Harrison, Katherine Randle, and Sible Polk--listed either rehabilitation or deterrence as the most important goal of sentencing. Randle and Marilyn Record, another African-American struck by the prosecutor, both said that police officers were "less likely" to tell the truth than the average person. By contrast, the two comparator white jurors identified by petitioner--Jeanine Byrd and Mary Tweed--both said that punishment was the most important objective of sentencing and believed that police officers were either "more likely" to tell the truth than the average person or that there was "no difference." That leaves Chatea Mills, an African-American who was struck because her husband was on felony probation and her brother-in-law was currently in prison. It is true that Mills, like Byrd and Tweed, listed punishment as the most important goal of sentencing. Mills also believed that police officers were "more likely" to tell the truth. And, as petitioner points out, Byrd and Tweed also had relatives on probation. However, as the prosecutor explained, Mills had *two* close family members who were either on felony probation or serving time in prison, whereas Byrd and Tweed had more distant relatives on probation for less serious crimes. (*See* SF-II at 88-89).

The court is mindful of the decision in *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ("*Miller-El II*"), where a six-justice majority of the Supreme Court vacated a Dallas County capital murder conviction and death sentence because of a *Batson* violation. Although the prosecutors in both *Miller-El II* and petitioner's case used a disproportionate number of their allotted peremptory challenges to exclude eligible African-Americans from jury service, there are significant differences between the two cases. In *Miller-El II*, a side-by-side comparison of African-Americans who were struck from the jury panel and whites who served on the jury

revealed that several of the jurors shared nearly identical characteristics but were treated differently. *Miller-El II*, 125 S.Ct. at 2319-20. By contrast, the African-Americans struck by the prosecution in the instant case were not similarly situated to the white jurors who served. Moreover, the prosecutor in *Miller-El II* shuffled the jury panel two different times to obtain a more favorable array and posed contrasting questions about the death penalty to African-American and white jurors. *Id.* at 2322. No such evidence exists in this case. Finally, and perhaps most significantly, the defendant in *Miller-El II* was tried in 1986--more than 16 years before petitioner. For decades preceding the Miller-El trial, the Dallas County District Attorney's office had followed a policy of systematically excluding African-Americans from juries. *Id.* at 2321-22. While petitioner maintains that such discriminatory practices continue today, there is no evidence to support that speculative assertion.[4]

The court also acknowledges that this is a close case, particularly with regard to the exclusion of Chatea Mills. The use of peremptory challenges to exclude five of six eligible African-Americans from jury service is inherently suspect and warrants close judicial scrutiny. Indeed, this court may well have reached a different conclusion had it presided over petitioner's trial and had the opportunity to observe the credibility and demeanor of the prosecutor who exercised the peremptory strikes. But in order to obtain federal habeas relief, petitioner must prove that the resolution of this issue by the state court "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner has failed to meet this heavy burden. Consequently, this ground for relief must be overruled.

---

[4] Petitioner relies on a January 2007 article from the *Dallas Morning News* to support his claim that "Dallas County prosecutors have a long history of routinely excluding minorities from jury panels" and that the practice continues today. (*See* Pet. Mem. Br. at 7 & Exh. A). Even if this evidence is admissible on federal habeas review, the subject of the article is current Dallas County District Attorney Craig Watkins, who took office more than thee years after petitioner' trial.

C.

Petitioner further contends that he received ineffective assistance of counsel at trial because his attorney: (1) tried the case on a theory of self-defense rather than actual innocence; and (2) did not file a motion to suppress evidence obtained as a result of an illegal arrest. Respondent counters that the first claim is without merit and the second claim is procedurally barred from federal habeas review.

1.

The gravamen of petitioner's first ineffective assistance of counsel claim is that his attorney did not conduct an adequate investigation before developing a trial strategy focused on self-defense rather than actual innocence. Had the facts been throughly investigated, petitioner believes his lawyer would have discovered evidence that showed he did not shoot at the police officer.

a.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. The Fifth Circuit has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), *quoting United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d

1115, 1122 (5th Cir. 1997). Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Strickland*, 104 S.Ct. at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

When assessing the reasonableness of an attorney's investigation, the court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005), *quoting Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). "Counsel is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Moore v. Johnson*, 194 F.3d 586, 616 (5th Cir. 1999), *quoting Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980) (internal quotations omitted). In order to establish that an attorney was ineffective for failing to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Miller*, 420 F.3d at 361.

b.

Petitioner alleges that further investigation by his attorney would have revealed that the state never tested his hands for gun powder residue and that he was shot in the back by the police officer-- two pieces of evidence that would have established a defense of actual innocence. Contrary to petitioner's argument, both facts were well-known to counsel. At trial, petitioner's attorney questioned Dallas Police Detective James Vineyard about the availability of a "hand washing test" to determine whether a person fired a handgun. Vineyard admitted that such a test existed, but that he never ordered one on petitioner. (*See* SF-III at 129-30). Likewise, counsel attempted to introduce

petitioner's medical records during the guilt/innocence phase of the trial to show that he had been shot in the back. The trial court excluded the records as irrelevant. (*See id.* at 154).[5]

Nor was counsel ineffective for making the strategic decision to try this case on a theory of self-defense. Two different witnesses testified they saw a man shoot at a police officer who was chasing him. (*See* SF-III at 76, 92-93). The officer shot back and the suspect fled. Although no one could identify petitioner as the shooter, one witness, Earlie Haley, testified that petitioner was the man running from the officer. (*Id.* at 90). Shortly after the shooting, the police found petitioner hiding in a nearby house, wounded by a gunshot in the back. (*Id.* at 49-50). In light of the evidence that petitioner was the person who shot at the police officer, counsel's decision to try the case on a theory of self-defense rather than actual innocence was a reasonable trial strategy. *See Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir.), *cert. denied*, 126 S.Ct. 550 (2005) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

## 2.

Petitioner also criticizes his attorney for failing to file a motion to suppress. A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). Only procedural rules that are firmly established and regularly followed by state courts can prevent habeas review of federal constitutional rights. *Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 2426, 72 L. Ed.2d 824 (1982). Article 11.07 of the Texas Code of Criminal Procedure prohibits a

---

[5] Petitioner's medical records were admitted into evidence during the punishment phase of the trial. (*See* SF-IV at 189).

second habeas petition if the petitioner urges grounds therein that could have been, but were not, raised in his first habeas petition. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon Supp. 2003).[6] This statute constitutes an adequate state procedural bar for purposes of federal habeas review. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.), *cert. denied*, 115 S.Ct. 2603 (1995). The procedural bar doctrine also applies to unexhausted claims if the state court would likely dismiss a successive habeas petition under article 11.07. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991) (procedural default occurs when prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

Although petitioner raised an ineffective assistance of counsel claim on state collateral review, he alleged only that his attorney was ineffective for failing to timely file a petition for discretionary review and for not presenting a defense of actual innocence. *See Ex parte Hogues*, WR-64,789-01 at 7, 12-15 & WR-64,789-02 at 7, 12-15. Nowhere in any of his state writs did petitioner even mention, much less argue, that defense counsel failed to file a motion to suppress. The court finds that a Texas court, presented with this claim in a successive habeas petition, would

---

[6] The statute provides, in relevant part, that:

> (a)     If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

> (1)     the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

> (2)     by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt . . .

TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).

likely find it barred under article 11.07. Consequently, federal habeas relief is not proper. *Coleman*, 111 S.Ct. at 2557 n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 422-23 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1845 (1998).

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   August 24, 2007.


JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE